Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| MANUEL CORREA MÁRQUEZ<br><br>Peticionario<br><br>v.<br><br>CARMEN M. JULÍA RODRÍGUEZ<br><br>Recurrida | KLCE202401004<br><br>CONS. CON<br><br>KLCE202401212<br><br>Y<br><br>KLCE202401372 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso núm.: KDI2009-0289<br><br>Sobre: DIVORCIO |
|---|---|---|

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Ronda Del Toro y la Jueza Díaz Rivera.

Díaz Rivera, Jueza Ponente

## **R E S O L U C I Ó N**

En San Juan, Puerto Rico, a 4 de febrero de 2025.

Comparece ante *nos*, Manuel Correa Márquez (Correa Márquez o peticionario) y mediante el recurso de *certiorari* KLCE202401004 nos solicita que revisemos una *Resolución* emitida el 9 de julio de 2024 y notificada el 15 de julio de 2024, por el Tribunal de Primera Instancia (TPI o foro primario), Sala Superior de San Juan. Mediante dicho dictamen, el TPI atendió varias controversias acaecidas entre las partes relacionadas con los alimentos entre parientes.

Además, mediante el recurso de *certiorari* alfanumérico KLCE202401212 nos solicita que revisemos una *Orden* emitida el 12 de septiembre de 2024 y notificada el 17 de septiembre de 2024, mediante la cual el foro primario denegó la solicitud del peticionario para el reembolso de alimentos pagados en exceso.

Asimismo, Correa Márquez nos solicita mediante el recurso de *certiorari* KLCE202401273 que revisemos una *Resolución* emitida el 13 de noviembre de 2024 y notificada el 18 de noviembre de 2024. Mediante dicho dictamen el TPI denegó la solicitud del peticionario

Número Identificador
RES2025 _____

para la desestimación por prescripción de la reclamación de Carmen Juliá Rodríguez (Juliá Rodríguez o recurrida), para el pago de alimentos excónyuge presuntamente adeudados, así como no concedió crédito alguno por los pagos realizados en exceso a la deuda aducida.

Por los fundamentos que se exponen a continuación, se *deniega* la expedición del auto de *certiorari* para los recursos tres (3) recursos consolidados.

## I.

### KLCE202401004

El 23 de marzo de 1984, Correa Márquez y Juliá Rodríguez contrajeron matrimonio. Fruto de dicho matrimonio las partes procrearon cuatro (4) hijos: Alejandra, Manuel, Francisco y Fernando Correa Juliá, quienes actualmente son mayores de edad. El 27 de febrero de 2009, el TPI emitió una *Resolución* mediante la cual le impuso al peticionario una pensión alimentaria provisional de $4,017.00 mensuales para beneficio de sus hijos Francisco y Fernando Correa Juliá (interventores).

Posteriormente, el 2 de octubre de 2009, el foro primario emitió una *Sentencia* mediante la cual disolvió el vínculo matrimonial habido entre las partes. En dicha *Sentencia,* el TPI determinó que hasta octubre de 2009 la pensión alimentaria familiar fijada era de $5,576.00; además, fijó una pensión alimentaria provisional para los menores por $4,017.00 mensuales. Luego de varios incidentes procesales, el 26 de enero de 2015, el TPI emitió una *Sentencia* mediante la cual declaró con lugar la solicitud de pensión ex cónyuge de la recurrida. Asimismo, el foro primario fijó las siguientes pensiones entre parientes:

a. Fernando Correa Juliá – pensión alimentaria por $733.91 mensual, efectivo el 22 de agosto de 2012.

b. Francisco Correa Juliá – pensión alimentaria por $1,067.61 con fecha de efectividad a partir del 27 de

agosto de 2010. Luego, esa pensión alimentaria se redujo a $861.78, mediante Sentencia emitida el 13 de julio de 2015, en el caso KLAN201500499.

c. Manuel Correa Juliá – pensión alimentaria por $979.01 mensuales a partir del 2 de diciembre de 2009.

El 20 de octubre de 2015, Correa Márquez presentó una *Moción Urgente Solicitando Relevo de Pensión*. Sostuvo que sobre pagó $120,037.55, cuando sus hijos eran menores de edad y advinieron a la mayoría de edad. Subsiguientemente, el 28 de marzo de 2016, el foro primario emitió una *Resolución* mediante la cual declaró *No Ha Lugar* la *Moción Urgente Solicitando Relevo de Pensión* y determinó que:

a. Se mantiene la pensión entre parientes de $733.91 mensuales a beneficio de Fernando Correa Juliá, sujeto a que en 20 días acredite que prosiguió y continua de forma ininterrumpida con los estudios de Derecho.

b. Se releva al Sr. Correa del pago de la pensión entre parientes de $979.01 mensuales a favor de Manuel Correa Juliá, efectiva a la fecha en que se emite la presente determinación.

c. Se ordena al cumplimiento inmediato del demandante con el pago de alimentos entre parientes, so pena de desacato.

d. Se ordena a que en el término de 20 días el Sr. Correa presente prueba juramentada que demuestre el pago de las pensiones que adujo realizó. Además, que presente prueba del pago de la hipoteca de la propiedad en que residen los jóvenes.

e. Se ordena a que en el término de 10 días el joven Francisco informe al Tribunal si desea continuar con su causa de acción, so pena de tenerse por desistida.

El 23 de mayo de 2016, el peticionario presentó una *Moción urgente solicitando señalamiento de vista para revisar procedencia de pensión de alimentos entre parientes y atender crédito del demandante*. En la misma, le solicitó al TPI atender el crédito que tiene por razón de pagos en exceso de pensión a favor de menores de edad y a favor de mayores de edad. Además, solicitó una vista para evaluar la controversia relacionada a los alimentos entre parientes. Oportunamente, el 27 de junio de 2017, el foro primario

emitió una *Resolución* mediante la cual relevó al peticionario de la pensión alimentaria a favor de Manuel Correa Juliá a octubre de 2015.

Así las cosas, el 7 de febrero de 2018, Correa Márquez señaló, nuevamente, que tenía un crédito por $101,007.00 por pagos en exceso de lo que correspondía a la pensión de sus hijos mientras eran menores de edad. Asimismo, reclamó $25,447.96 como crédito en contra de sus hijos por haber hecho sobrepagos luego de estos ser mayores de edad. Entretanto, el 18 de septiembre de 2019, el TPI emitió una *Resolución* mediante la cual determinó que la pensión entre parientes no estaba vigente; además, con relación al crédito de $101,007.47 explicó que:

> [s]e trata de dos reclamaciones o acreencias distintas. El crédito de $101,007.47 surge a raíz de un nuevo computo realizado por la EPA de la pensión de alimentos de unos menores de edad. La deuda que tiene el Sr. Correa es de una pensión excónyuge. Por lo cual se declara No Ha Lugar la solicitud de que se deduzca el crédito de los $101,007.47 de la pensión alimentaria (cuya suma no ha sido controvertida) a la deuda que tiene de pensión excónyuge. Deberá reclamar el demandante la suma que corresponda, contra los bienes de la Sra. Juliá.

Así, en cuanto al crédito de $25,447.96 que solicitó por la pensión alimentaria a los interventores mayores de edad, el foro primario le ordenó a Correa Márquez que presentara un desglose de mes por mes sobre los pagos que les hizo a los tres (3) jóvenes por la pensión entre parientes; el mes que corresponde y el exceso que aduce. El 3 de octubre de 2019, el peticionario solicitó una reconsideración. Luego, el 25 de octubre de 2019, el TPI emitió una *Resolución* mediante la cual reiteró declarar *No Ha Lugar* el crédito que reclamaba por los pagos en exceso a la pensión alimentaria de los menores.

Luego de varios trámites procesales, el 5 de octubre de 2022, Correa Márquez presentó una *Moción de Sentencia Sumaria*. A grandes rasgos, planteó que pagó alimentos provisionales en exceso

para sus hijos, los que debían ser acreditados. Esbozó que pagó una pensión provisional de $4,017.00 desde noviembre de 2009 hasta febrero de 2015, por sesenta y cuatro (64) meses y que sus hijos, los interventores, no tenían derecho a recibir alimentos entre parientes en ciertos períodos. Aseveró, además, que durante diez (10) meses durante los años 2015 y 2016 pagó la hipoteca de la propiedad en que vivían los interventores.

Asimismo, Correa Márquez planteó que los interventores le reclaman una deuda de $141,603.42, sin embargo, no reconoce esa deuda. Manifestó que para los años 2009 al 2016 realizó pagos de pensión provisional por una suma en exceso, mientras que la pensión permanente fijada en septiembre de 2015, retroactiva al 3 de febrero de 2009 era por una cantidad menor. Así, le reclamó a Manuel el pago de $29,652.01; a Francisco $25,242.25 y a Fernando $1,996.02.

Mientras, el 22 de noviembre de 2022, los interventores presentaron una *Oposición a Solicitud de Sentencia Sumaria [...]*. En esta, expresaron que Correa Márquez intentó cobrarle a Juliá Rodríguez el crédito en el ajuste de la pensión alimentaria para los interventores Francisco y Fernando para el período comprendido desde el 2009 al 2012 mientras eran menores. Señalaron que el pedido del peticionario no prosperó, pues el TPI determinó que perdió el derecho a reclamar este ajuste cuando firmó la estipulación de la liquidación de la sociedad de gananciales. Resaltaron que las pensiones alimentarias fijadas constituyen cosa juzgada y que Correa Márquez nunca invocó su derecho a un crédito.

Consecuentemente, el 4 de enero de 2023, el foro primario emitió una *Resolución de Sentencia Sumaria* mediante la cual determinó, entre otras cosas, no acreditar al peticionario las sumas de pensión provisional que debía recibir su excónyuge, a los hijos adultos que son partes indispensables en este caso. Inconforme, el

9 de febrero de 2023, Correa Márquez acudió ante *nos* mediante un recurso de *certiorari.* El 30 de mayo de 2023, emitimos una *Sentencia Enmendada* mediante la cual, entre otras cosas, determinamos lo siguiente:

> se confirma la parte de la Resolución que establece que la pensión entre parientes concedida a Francisco Correa Juliá culminó en enero de 2013. El resto de lo determinado en la Resolución se revoca y se devuelve el caso al Tribunal de Primera Instancia para la celebración de la correspondiente vista evidenciaría de forma compatible con lo aquí dispuesto y en la nueva Resolución deberá detallar el concepto de cada pago a cada uno de los hijos y la excónyuge, así como detallar las partidas de las pensiones provisionales habidas desde el 2009 en adelante.

De conformidad con lo anterior, el 11 de junio de 2024, el foro primario llevó a cabo una vista evidenciaría. El 9 de julio de 2024, el TPI emitió una *Resolución,* notificada el 15 de julio de 2024, mediante la cual realizó las siguientes determinaciones de hechos:

1. Todos los jóvenes vivieron en casa de su madre hasta por lo menos abril de 2016.
2. Los pagos realizados por el Sr. Correa a la hipoteca donde vivían los jóvenes, de forma directa, fueron los siguientes:

   - $1472.87      3 de agosto de 2015
   - $1472.87      18 de agosto de 2015
   - $1472.87      16 de septiembre de 2015
   - $1472.87      13 de octubre de 2015
   - $1472.87      12 de noviembre de 2015
   - $1472.87      22 de diciembre de 2015
   - $1472.87      12 de enero de 2016
   - $1472.87      11 de febrero de 2016
   - $1472.87      10 de marzo de 2016
   - $1472.87      8 de abril de 2016

3. Se le debe deducir al Sr. Correa la porción de la hipoteca que le correspondía a cada joven, esto es la suma de $368.22 por los meses que el Sr. Correa y cada joven tenía derecho a pensión entre parientes.

4. Los pagos a descontarse a cada joven por las partidas de hipoteca pagadas por el Sr. Correa son las siguientes:

   - Fernando: $3682.20 (meses de julio, agosto, septiembre y octubre, noviembre, diciembre de 2015 y enero, febrero, marzo de 2016, de $368.22).

- Manuel: $1472.88 (meses de julio, agosto, septiembre y octubre de 2015).

- Francisco: $0 (no había obligación de pago de pensión entre parientes hacia Francisco durante el periodo que el Sr. Correa realizó los 10 pagos de hipoteca de forma directa entre julio de 2015 y abril de 2016).

5. Durante el periodo que Manuel era acreedor de la pensión entre parientes, el demandante debía pagarle $979.01. En total debía haberle pagado a su hijo Manuel la suma de $69,509.71, que corresponde a 71 pagos a razón de $979.01 desde diciembre de 2009 a octubre de 2015 de la siguiente manera:

   [...]

6. Durante el periodo que Francisco era acreedor de la pensión entre parientes, el demandante debía pagarle $861.78. En total debía haberle pagado a su hijo Francisco la suma de $25,853.40, que corresponde a 29 pagos a razón de $861.78 desde agosto de 2010 a diciembre de 2013 de la siguiente manera:

   [...]

7. Durante el periodo que Fernando era acreedor de la pensión entre parientes, el demandante debía pagarle $733.91 mensuales. Debía haberle pagado a su hijo Fernando la suma de $47,704.15, que corresponde a 65 pagos a razón de $861.78 desde agosto de 2012 a diciembre de 2017 de la siguiente manera:

   [...]

8. Los pagos que recibieron los jóvenes de pensión entre parientes de forma directa del Sr. Correa se establecen a continuación (en la tabla se especifican las fechas en que fueron pagadas):

   A Fernando: $5,637.37

   A Francisco: $0

   A Manuel: $7,353.07

9. Estas sumas deben ser deducidas de la deuda del Sr. Correa.

   [...]

10. Los gastos imputados a Manuel en la pensión entre parientes fueron los siguientes:

    Tabla 5 – Gastos de Manuel

    $250.00 alimentos en el hogar

    $381.83 Hipo

    $43.75 mantenimiento

    $200.00 luz

    $25.00 agua

$38.75 cable tv

$17.50 jardinero

$6.25 fumigador

$65.58 materiales escolares

$40.00 FC

$150.00 alimentos fuera

$15.33 marbete

$70.83 mantenim auto

$259.80 gasolina

$125.00 ropa

$13.75 deducibles meds

11. Los gastos imputados a Fernando en la pensión entre parientes fueron los siguientes:

Tabla 6 – Gastos Fernando

$381.83 Hipo

$43.75 mantenimiento

$200.00 luz

$25.00 agua

$38.75 cable tv

$17.50 jardinero

$6.25 fumigador

$216.50 alimentos fuera

$216.50 gasolina

$100.00 ropa

$90.00 celular

$38.33 gastos meds y espejuelos

12. Los gastos imputados a Francisco en la pensión entre parientes fueron los siguientes:

Tabla 7 – Gastos Francisco

$250.00 alimentos dentro hogar

$381.83 Hipo

$43.75 mantenimiento

$200.00 luz

$25.00 agua

$38.75 cable tv

$17.50 jardinero

$6.25 fumigador

$150.00 alimentos fuera

$34.64 estacionamiento uni

$18.33 materiales escolares

$259.80 gastos auto

$25.45 reparación y manten auto

$125.00 ropa

$80.00 celular

$42.15 espeju

13. Durante el periodo que el Sr. Manuel Correa pagaba la pensión de menores de $4017 los jóvenes residían en la residente de la madre.

14. Considerando que los gastos de los jóvenes Fernando y Francisco, como adultos, incluían gastos del hogar que estaban siendo cubiertos con el pago que se hacía de pensión de alimentos de $4,017 en aquella época, y que en efecto era para beneficio de estos dos jóvenes, el Tribunal le concede a Manuel Correa ciertos créditos relacionados a ese periodo de tiempo, relacionado a estos dos jóvenes. Los créditos que se conceden se basan en los gastos relacionados a ese periodo de tiempo, relacionado a estos dos jóvenes. Los créditos que se conceden se basan en los gastos relacionados al hogar, esto es, los gastos que los jóvenes probaron para tener derechos a la pensión entre parientes. Estos gastos son: la hipoteca, el mantenimiento, la luz, el agua, el cable tv, el jardinero y el fumigador. Estos son gastos inherentes a los gastos diarios del hogar que se pagaban con el dinero que la Sra. Juliá recibía en ese periodo.

15. Con relación a Francisco se otorga también un crédito por los alimentos en el hogar por ser gastos inherentes al hogar. Sin embargo, con relación a Fernando no concedemos crédito por los gastos de alimentos en el hogar porque a pesar de que el tribunal estableció su necesidad, no los incluyó en el cómputo de las necesidades de Fernando. De otra parte, los otros gastos y necesidades establecidas en la pensión entre parientes no son gastos que inherentemente son gastos del hogar y los jóvenes requerían según surge de la determinación del Tribunal en aquel momento.

16. Los descuentos o créditos se otorgan hasta la fecha que el Sr. Correa pagó loa $4017.

[…]

17. Explicación sobre Fernando:

> ➢ El Tribunal le impuso al Sr. Correa, la suma de $733.91 de pensión entre parientes.

> ➤ De la Tabla 8 y los hechos sobre los cuales no hay controversia surge lo siguiente:

> - Entre agosto de 2012 y diciembre de 2017 el Sr. Correa debió haber pagado a Fernando $47704.15 de pensión entre parientes.

> ➤ De la Tabla 8 surge que el Sr. Correa pagó $22,089.98 a la Sra. Juliá, que pueden establecerse que eran gastos del hogar, por los cuales le estamos considerando créditos, esto es, de los $733.91 que debió haber pagado durante ese periodo, le estamos concediendo un crédito de $712.58 mensual en cada uno de esos meses, correspondientes a las siguientes partidas:

> - $381.33 de hipoteca x 31 meses = $11,821.23
> - $43.75 de mantenimiento x 31 meses = $1356.25
> - $200 de luz x 31 meses = $6200
> - $25 de agua x 31 meses = $775.00
> - $38.75 de cable tv x 31 meses = $1201.25
> - $17.50 de jardinero x 31 meses = $542.50
> - $6.25 de fumigador x 31 meses = $193.75

> ➤ El Sr. Correa también pagó $3682.20 por la porción de la hipoteca mensual de Fernando durante los meses, de julio, agosto, septiembre y octubre, noviembre, diciembre de 2015 y enero, febrero, marzo de 2016, de $368.22 por cada uno de los meses.

> ➤ Entre marzo de 2015 y octubre de 2015 el Sr. Correa pagó $5637.37 de pensión entre parientes directamente a Fernando (Tabla 4).

18. Computada la deuda del Sr. Correa a Fernando, surge que la misma asciende a $16,294.60:

$47704.15

-$22089.98   lo que se acredita a Fernando de lo pagado a la Sra. Juliá por gastos del hogar

$25,614.17

-$3682.20   crédito por pagos de hipoteca

$21,931.97

-$5637.37   lo que en efecto pago Sr. Correa directamente a Fernando

$16294.37   deuda del Sr. Correa a Fernando

[…]

19. Explicación de Francisco:
> ➤ Con relación a Francisco, el Tribunal le impuso al Sr. Correa, la suma de $861.78 de los gastos de Francisco.

> ➤ De la Tabla 9 y los hechos sobre los cuales no hay controversia surge lo siguiente:

> - Entre agosto de 2012 y diciembre de 2017 el Sr. Correa debió haber pagado a Francisco $25853.40 de pensión entre parientes.

> ➤ No hubo pago directo de pensión entre parientes del Sr. Correa a Francisco.

> ➤ De la Tabla 9 surge que el Sr. Correa cubrió las necesidades del hogar con lo que pagaba $4017 de la pensión a la Sra. Juliá que pueden establecerse que eran gastos del hogar, por los cuales le estamos considerando créditos, ascendente a $28,877.40 y que corresponde a las siguientes partidas:
>   - $250 de alimentos en el hogar x 6 meses = $1500
>   - $381.83 de hipoteca x 6 meses = $2287.98
>   - $43.75 de mantenimiento x 6 meses = 262
>   - $200 de luz x 6 meses = $1,200
>   - $25 de agua x 6 meses = $150.00
>   - $38.75 de cable tv x 6 meses $232.50
>   - $17.50 de jardinero x 6 meses = $105
>   - $6.25 de fumigador x 6 meses = $37.50

20. Computada la deuda y créditos surge lo siguiente:
    $25853.40
    -$28,877.40  lo que se acredita a Manuel de lo pagado
                 a la Sra. Juliá por gastos del hogar
    -$3,024.00   deuda del Sr. Correa a Francisco

21. El Sr. Correa no tiene deuda con Francisco. Aunque surge que al computar los créditos del Sr. Correa pagó en exceso de lo que debía pagar a Francisco para cubrir la necesidad de Francisco, no procede el recobro de esta suma al joven. Esto, porque las sumas pagadas fueron pagadas a la Sra. Juliá y no al joven.

22. Con relación a Manuel, según surge de la petición que hiciera la Sra. Juliá inicialmente al Tribunal de pensión de alimentos, la misma no incluía a Manuel porque este era ya un adulto. Por lo cual las sumas pagadas a la Sra. Juliá no eran para beneficio de Manuel. Tampoco la pensión de alimentos establecida en el 2015 lo incluyó, por esta misma razón. Por lo cual, no le concedemos crédito por los pagos realizados por a la Sra. Juliá por los gastos del hogar.

23. Sin embargo, el Sr. Correa pagó $1472.88 por la porción de la hipoteca mensual de Manuel durante los meses, de julio, agosto, septiembre y octubre de 2015, de $368.22 por cada uno de los meses.

24. Computada la deuda y créditos surge lo siguiente:

    $69,509.71
    -$7351.07   lo que en efecto pagó Sr. Correa directamente
                directamente a Manuel
    $62,154.64
    $1472.88    crédito por pagos de hipoteca
    $60,681.76 deuda del Sr. Correa a Manuel

Inconforme, el 30 de julio de 2024, Francisco M. Correa Juliá presentó una *Moción de Reconsideración.* El 7 de agosto de 2024, el TPI emitió una *Resolución* mediante la cual declaró *No Ha Lugar* la

solicitud de reconsideración. Inconforme aun, el 18 de septiembre de 2024, la parte peticionaria acudió ante *nos* mediante una *Petición de Certiorari* al cual se le asignó el número KLCE202401004 y alegó la comisión de los siguientes errores:

### PRIMER ERROR

Actuó con pasión, prejuicio, parcialidad y cometió error manifiesto el Tribunal de Primera Instancia al no conceder al peticionario crédito alguno por los 31 pagos de alimentos entre parientes que realizó por la suma mensual de $4,017 desde agosto de 2012 a febrero de 2015 a los alimentos del interventor Manuel Correa Juliá, a pesar de que la *Sentencia Enmendada* de este Tribunal de 30 de mayo de 2023 en el caso KLCE202300127 resolvió que tales pagos constituían alimentos entre parientes y debían ser acreditados a la obligación alimentaria de cada uno de los interventores, en clara contravención al mandato de esta Magistratura y de los principios que rigen la ley del caso. Además, la decisión de que el peticionario le adeuda $60, 681.76 de alimentos al interventor, Manuel es contraria a derecho y le impone al peticionario la obligación de realizar un doble pago de alimentos lo que constituye un enriquecimiento indebido prohibido por el Artículo 1526 del Código Civil de 2020.

### SEGUNDO ERROR

Erró el Tribunal de Instancia al acreditar a los alimentos entre parientes del interventor Manuel Correa Juliá tan solo cuatro de los diez pagos realizados por el peticionario de manera directa al acreedor hipotecario de la propiedad en que este residió junto a su madre y hermanos.

### TERCER ERROR

El foro de instancia cometió error al resolver que no procedía acreditar a los alimentos del interventor Francisco Correa Juliá los diez pagos de la hipoteca que el peticionario satisfizo de manera directa al acreedor hipotecario de la propiedad en que el interventor residió hasta mayo de 2016 bajo el erróneo fundamento de que no existía obligación de pago de alimentos para el periodo de dichos pagos, a pesar de que el relevo de los alimentos en cuanto a este interventor se decretó el 4 de enero de 2023, con retroactividad a enero de 2013, cuando ya había transcurrido siete años desde que se habían efectuado los pagos.

### CUARTO ERROR

Incidió el TPI al resolver que la obligación alimentaria del peticionario hacia el interventor Fernando Correa Juliá se extendió desde el mes de

agosto de 2012 hasta diciembre de 2017, fecha en que terminó los estudios de Derecho, a pesar de que en varios escritos judiciales el interventor planteó y reclamó que el peticionario le adeudaba 21 pagos de alimentos y en la vista celebrada el 11 de junio de 2024 no presentó prueba alguna en cuanto a la deuda que alegaba existía.

### QUINTO ERROR

El TPI abusó de su discreción y cometió error manifiesto al determinar que el peticionario tenía la obligación de satisfacer alimentos entre parientes al interventor Fernando Correa Juliá durante el año 2017 sin tomar en consideración que en la *Resolución de Sentencia Sumaria* determinó como hecho sobre el cual no existe controversia que el interventor incumplió la obligación continua que le impuso la *Sentencia* de 26 de enero de 2015 de proveer información sobre sus estudios para el año 2017.

### SEXTO ERROR

Cometió error manifiesto el Tribunal de Primera Instancia al relevar a los interventores Manuel, Francisco y Fernando Correa Juliá de presentar prueba para establecer el monto de sus reclamaciones, a pesar de que como acreedores del peticionario Manuel Correa Márquez les correspondía establecer, mediante preponderancia de evidencia, la existencia de una deuda y el monto de la misma. Al emitir la decisión recurrida, el foro de instancia descansó en las meras aseveraciones de dos mociones de los interventores en que alegaban el monto de lo alegadamente adeudado a cada uno. Más aún, en la *Resolución de Sentencia Sumaria* de 4 de enero de 2023 no hay determinación de hecho alguna en cuanto a las cantidades alegadamente adeudadas.

El 25 de septiembre de 2024, emitimos una *Resolución* mediante la cual le ordenamos al peticionario tramitar la regrabación de los procedimientos judiciales ante el TPI y presentar la transcripción de la prueba estipulada. Asimismo, concedimos un terminó a la parte recurrida para presentar su oposición al recurso. El 7 de octubre de 2024, los interventores presentaron una *Urgente Moción Solicitando Aclaración sobre Resolución.* Así, el 21 de octubre de 2024, el peticionario presentó una *Moción Informativa.* El 29 de octubre de 2024, emitimos una *Resolución* mediante la cual, entre otras cosas, se corrigió un error clerical cometido en la *Resolución*

del 25 de septiembre de 2024; a esos efectos, emitimos una *Resolución Nunc Pro Tunc.*

**KLCE202401212 y KLCE202401372**

Surge del expediente ante *nos* que, el 19 de julio de 2024, Juliá Rodríguez presentó una *Moción Solicitando Saldo de Pensión Excónyuge Adeudada.* En esta, solicitó el pago de una deuda acumulada por concepto de pensión excónyuge ascendente a $100,000.00 más los intereses. Consecuentemente, el 9 de septiembre de 2024, Correa Márquez presentó una *Solicitud para el Reembolso de Pagos de Alimentos Entre Parientes.* En la misma, solicitó un reembolso de $76,583.62 por pagos en exceso de alimentos entre parientes. Así, sostuvo que la solicitud de reembolso no tiene relación alguna con los alimentos de menores y las decisiones del tribunal de que se renunció a la reclamación por no haberse incluido en la liquidación de los bienes gananciales. En igual fecha, el peticionario presentó una *Solicitud para la Desestimación de "Moción Solicitado Saldo de Pensión Excónyuge Adeudada por la Prescripción de la Reclamación".*

Subsiguientemente, el 12 de septiembre de 2024, el TPI emitió una *Orden* mediante la cual dispuso: *No Ha Lugar. Véase Resolución de 9 de julio de 2024* a la solicitud de reembolso de pagos de alimentos entre parientes. El 2 de octubre de 2024, el peticionario presentó una *Solicitud de Reconsideración.* Entretanto, el 3 de octubre de 2024, el foro primario emitió una *Orden* mediante la cual determinó que la solicitud del peticionario no era conforme a la determinación del 9 de julio de 2024.

El 17 de octubre de 2024, la recurrida presentó una *Réplica a Solicitud de Desestimación de Moción Solicitando Saldo de Pensión Excónyuge […].* Oportunamente, el 13 de noviembre de 2024, el TPI emitió una *Resolución,* notificada el 18 de noviembre de 2024, mediante la cual declaró *Ha Lugar* la *Moción Solicitando Saldo de*

*Pensión Excónyuge Adeudada.* Así, el foro primario determinó que la última reclamación de Juliá Rodríguez respecto al pago total adeudado de $101,007.47 fue el 27 de julio de 2020. Señaló que a partir de dicha comunicación hasta la presentación de la *Moción Solicitando Saldo de Pensión Excónyuge Adeudada*, que se presentó el 19 de julio de 2024, han transcurrido tres (3) años, once (11) meses y veintidós (22) días. Razonó que siendo el período de prescripción para alimentos vencidos de cinco (5) años, la recurrida tiene derecho a reclamar la pensión excónyuge adeudada.

Inconforme, el 6 de noviembre de 2024, el peticionario presentó una segunda *Petición de Certiorari* con el alfanumérico KLCE202401212 y alegó la comisión del siguiente señalamiento de error:

> Cometió error el Tribunal de Primera Instancia al denegar la solicitud para que la recurrida reembolse los alimentos pagados en exceso por el peticionario basada la misma en que dicho foro tan solo acreditó la suma de $47,943.38 ($25,853.40 a los alimentos del interventor Francisco Correa Juliá y $22,089.98 a los alimentos del interventor Fernando Correa Juliá) y no concedió crédito alguno a los alimentos del interventor Manuel Correa Juliá, a pesar de que el peticionario satisfizo un total de $124,527.99 de alimentos entre parientes. Además, denegó la solicitud de reembolso de los alimentos pagados en exceso al interventor Francisco Correa Juliá.

Posteriormente, el 18 de diciembre de 2024, Correa Márquez presentó una tercera *Petición de Certiorari* al cual se le asignó el alfanumérico KLCE202401372 y alegó la comisión del siguiente señalamiento de error:

> Cometió error de derecho y abusó de su discreción el Tribunal de Primera Instancia al resolver que el peticionario adeuda la cantidad de $101,007.47 de pensión en cónyuge *[sic]*, suma alegadamente adeudada para marzo de 2019, y no tomó en consideración que la pensión fue rebajada el 21 de febrero de 2021, con retroactividad al *[sic]* marzo de 2018, no realizó el ajuste correspondiente ni concedió crédito alguno por los pagos en exceso realizados desde el año 2019 a 2021. Además de ello, para poder determinar si existe alguna deuda es necesario considerar los pagos que recibió la recurrida para destinarlos a los alimentos entre parientes de los

interventores que no fueron acreditados por el foro primario a dicha obligación, controversia planteada en el caso KLCE202401212.

Así, mediante *Resolución* ordenamos la consolidación de los casos KLCE202401212 y KLCE202401372 con el KLCE202401004, por tratarse del mismo asunto y derecho aplicable. Luego de múltiples incidentes procesales, innecesarios pormenorizar, el 21 de enero de 2025, los interventores presentaron una *Oposición a la Expedición del Auto de Certiorari*. Así pues, sin el beneficio de la comparecencia de la parte recurrida, pasamos a resolver.

## II.

### A. *Certiorari*

El auto de *certiorari* es el recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar, a su discreción, una decisión de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194 (2023). Véase, además, *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023); *800 Ponce de León v. AIG*, 205 DPR 163 (2020); *Pueblo v. Díaz de León*, 176 DPR 913 (2009). En particular, es un recurso mediante el cual se solicita la corrección de un error cometido por un foro inferior. *Torres González v. Zaragoza Meléndez, supra*. Así pues, la determinación de expedir o denegar un recurso de *certiorari* está enmarcada en la discreción judicial. *800 Ponce de León v. AIG, supra*. Es decir, la característica distintiva de este recurso se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos. *BPPR v. SLG Gómez-López*, 2023 TSPR 145, 213 DPR ___ (2023). No obstante, la discreción judicial para expedir o no el auto de *certiorari* solicitado no ocurre en un vacío ni en ausencia de unos parámetros. *Torres González v. Zaragoza Meléndez, supra*.

Con el fin de que podamos ejercer de una manera sensata nuestra facultad discrecional de entender o no en los méritos de los

asuntos que son planteados mediante el recurso, la Regla 40 de nuestro Reglamento, 4 LPRA Ap. XXII-B, señala los criterios que debemos considerar al atender una solicitud de expedición de un auto de *certiorari*. *Torres González v. Zaragoza Meléndez, supra*. En lo pertinente, la precitada disposición reglamentaria dispone lo siguiente:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari*, o de una orden de mostrar causa:
>
> A.  Si el remedio y la disposición de la decisión recurrida a diferencia de sus fundamentos son contrarios a derecho.
>
> B.  Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> C.  Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> D.  Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> E.  Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> F.  Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> G.  Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Nótese que, distinto al recurso de apelación, el auto de *certiorari*, por ser un recurso discrecional, debemos utilizarlo con cautela y por razones de peso. *Pueblo v. Díaz de León, supra*.

Ahora bien, el Tribunal Supremo de Puerto Rico reiteradamente ha indicado que la *discreción* significa tener poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción. *Pueblo v. Rivera Santiago*, 176 DPR 559 (2009); *García v. Padró*, 165 DPR 324 (2005). El adecuado ejercicio de la discreción judicial está "inexorable e indefectiblemente atado al concepto de la razonabilidad". *Pueblo v. Ortega Santiago*, 125 DPR 203 (1990). Así pues, un tribunal apelativo no intervendrá con las determinaciones discrecionales de un tribunal sentenciador, a no

ser que las decisiones emitidas por este último sean arbitrarias o en abuso de su discreción. *BPPR v. SLG Gómez-López, supra*. Véase, además, *Pueblo v. Rivera Santiago, supra*; *S.L.G. Flores, Jiménez v. Colberg*, 173 DPR 843 (2008).

**III.**

Examinados los recursos de *certiorari* de epígrafe, a la luz de las *Resoluciones* y la *Orden* recurrida, declinamos ejercer nuestra discreción para expedir el auto discrecional solicitado. *Veamos*.

Al examinar cuidadosamente el trámite procesal del caso y la transcripción de la prueba oral de la Vista Evidenciaria celebrada el 11 de junio de 2024, no encontramos indicio de que el TPI haya actuado de forma arbitraria, caprichosa, haya abusado al ejercer su discreción o cometido algún error de derecho. *Pueblo v. Rivera Santiago, supra*; *S.L.G. Flores, Jiménez v. Colberg, supra*. Véase, además, *Trans-Oceanic Life Ins. V. Oracle Corp*, 184 DPR 689, 709 (2012).

En el caso ante *nos*, el foro *a quo* evaluó la prueba testifical vertida en la Vista Evidenciaria, que ordenamos mediante la *Sentencia Enmendada* del 30 de mayo de 2023 y, en consecuencia, emitió la *Resolución* del 9 de julio de 2024. Es decir, la *Resolución* que emitió el TPI fue a base de la prueba testifical que presentó la parte peticionaria con relación a las controversias habidas y en cumplimiento con nuestra previa determinación.

Así pues, con tal proceder, el foro primario actuó dentro de su discreción y conforme a derecho. No debemos obviar que, fue el TPI quien recibió la prueba y quien tuvo amplia oportunidad de escuchar y evaluar el comportamiento de los testigos durante la celebración de la Vista Evidenciaria y otorgarle la credibilidad que le merecía. Además, de que el Tribunal tiene amplia facultad para disponer de los procedimientos ante su consideración de forma que

se pueda asegurar la más eficiente administración de la justicia. *Vives Vázquez v. E.L.A.*, 142 DPR 117 (1996).

Asimismo, con relación a la *Orden* del 12 de septiembre de 2024, que atendió la *Solicitud para el Reembolso de Pagos de Alimentos Entre Parientes* que presentó el peticionario y la *Resolución* del 13 de noviembre de 2024, que declaró *Ha Lugar* la *Moción Solicitando Saldo de Pensión Excónyuge Adeudada*, no procede que activemos nuestra función discrecional. Esto, pues no nos encontramos ante una determinación que configure abuso de discreción, prejuicio, parcialidad o error craso y manifiesto que amerite nuestra intervención revisora. Tampoco el peticionario nos ha persuadido de que, al aplicar la norma de abstención apelativa en este momento, conforme al asunto planteado, constituirá un fracaso de la justicia.

Así pues, puntualizamos, que el *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar, a su discreción, una decisión de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.*, *supra*. A esos efectos, la naturaleza discrecional del recurso de *certiorari* queda enmarcada dentro de la normativa que le concede deferencia de las actuaciones del foro primario, de cuyas determinaciones se presume su corrección.

En consecuencia, conforme a la Regla 52.1 de Procedimiento Civil, *supra*, y evaluados los criterios establecidos en la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, resolvemos denegar los recursos de *certiorari* solicitados, pues no identificamos fundamentos jurídicos que nos motiven a expedir el mismo.

**IV.**

Por los fundamentos antes expuestos, *denegamos* la expedición de los tres (3) recursos de *certiorari*.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones